**MANDATE**

14-4387-cr
*United States v. Johnny Dwyer*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of October, two thousand fifteen.

Present:
        DEBRA ANN LIVINGSTON,
        CHRISTOPHER F. DRONEY,
           *Circuit Judges*,
        SIDNEY H. STEIN,
           *District Judge*.*

_____

UNITED STATES OF AMERICA,

        *Appellee*,

    v.
                                             14-4387-cr

JOHN DOE,

        *Defendant*,

    v.

JOHNNY DWYER,

        *Intervenor-Appellant*.

_____

---

* The Honorable Sidney H. Stein, of the United States District Court for the Southern District of New York, sitting by designation.

1

MANDATE ISSUED ON 11/16/2015

| | |
|---|---|
| For Appellee: | DAVID K. KESSLER, Jo Ann M. Navickas, Assistant United States Attorneys, *for* Kelly T. Currie, Acting United States Attorney for the Eastern District of New York, Brooklyn, N.Y. |
| For Intervenor -Appellant: | ZACHARY MARGULIS-OHNUMA, Sharlene Morris, Law Office of Zachary Margulis-Ohnuma, New York, N.Y. |

**UPON DUE CONSIDERATION WHEREOF** it is hereby **ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Intervenor-Appellant Johnny Dwyer appeals from an October 30, 2014, order of the United States District Court for the Eastern District of New York (Chen, *J.*) granting Dwyer's motion to intervene in this criminal case but denying his motion to unseal. Dwyer, an independent journalist, seeks to unseal documents and the record of proceedings in this matter, which the district court, citing "compelling interests of the Government and Defendant," has determined should remain under seal for the present. A10. We assume the parties' familiarity with the issues on appeal, which we describe here only as necessary to explain our decision to affirm.

**I.   Background**

The underlying case involves criminal charges brought against an unnamed defendant, "John Doe." Although the criminal information was filed under seal, the public docket reveals the charges: two counts of providing material support or resources to terrorists, one count of receiving military-type training, and one count of unlawful use of firearms.

On August 12, 2014, the Government filed a letter with the district court, referencing "United States v. John Doe, Criminal Docket No. 14-438 (PKC)." A4. The letter reads as follows:

> A proceeding in the above-reference case is scheduled for August 13, 2014[,] at 5:30 p.m. before Your Honor. The government submits under separate cover a

2

>motion and proposed order to close the courtroom for the proceeding and requests, for the reasons set forth therein, that the motion and any order entered by the Court be filed under seal.

A4. In addition to placing the Government's letter on the docket, the district court also placed a public notice of the hearing—announcing the date, time, and location—on its website by 3:30 p.m. on August 12 and in the Clerk's office.

The district court held the hearing as scheduled the next day, on August 13, 2014, beginning approximately at 5:30 p.m. There, the district court publicly considered and granted the request to seal the courtroom. The rest of the proceeding occurred in the closed courtroom. According to a minute entry on the public docket, John Doe waived indictment and entered a guilty plea on all counts in an information charging him with the above-referenced crimes.

The same day, the district court filed a minute entry on the public docket memorializing the ruling it had made from the bench. That minute entry, dated August 13, 2014, stated: "For the reasons stated on the record the following is granted: (i) the government's motion to seal the courtroom; (ii) the government's request to seal the transcript of this proceeding; (iii) and to use the name 'John Doe' in place of the deft's true name in the case caption." A2, A5. The district court also filed contemporaneously under seal, the order granting the Government's motion and setting forth the reasons for doing so. Its existence, although not its reasoning, is set forth on the public docket as Docket Number 16.

On September 24, 2014, Dwyer, an independent journalist who covers "the intersection of terrorism, national security and the law," GA5, moved to intervene in the case as an interested party and "to unseal all documents and proceedings," A6. Dwyer argued before the district court that he had a right of access to the judicial proceedings and documents in the case, and he asserted that the district court had failed to satisfy the notice requirement before sealing the

3

courtroom on August 13. In an October 13, 2014, filing, the Government opposed Dwyer's motion. Therein, the Government relied on the reasons set forth in the sealing motion it had filed under seal on August 12.

On October 30, 2014, the district court granted Dwyer's motion to intervene "to assert the public's right of access to the sealed information." A8. The district court, however, denied Dwyer's motion to unseal, holding "that the pursuit of ongoing law enforcement activities outweigh[ed] the public's right of access to the sealed information under both federal and common law." A9.

The district court found, first, that the nonpublic nature of the Government's investigation involving national security issues was "crucial to [the investigation's] success." A10. Second, the district court found that unsealing could jeopardize the safety of numerous individuals and that safety concerns justified the sealing of the courtroom and related materials. A10. Last, the district court found that both "the closure of the proceedings and the sealing of the record were narrowly tailored to protect the law enforcement interests at stake." A10. There was no other "reasonable alternative to closing the courtroom and proceedings that would adequately protect the compelling interests of the Government and Defendant." A10. Making the proceedings public, the district court stated, could thwart significant law enforcement activities and place lives at risk. A10. The district court further explained that the public notice it had provided, which included docketing the Government's letter and posting the date, time, and location of the hearing on the court's website and in the Clerk's office, was sufficient. A10-11.

In this appeal, Dwyer asks this Court to review the district court's denial of his motion to unseal. Specifically, Dwyer challenges the use of "John Doe" in place of John Doe's true name, the sealing of certain documents, and the closing of the courtroom for the August 13,

4

2014, proceeding. The gravamen of Dwyer's argument is that the district court—both in granting the Government's motion to seal and in denying his motion to unseal—did not narrowly tailor the sealing and provided only "platitudes about national security." Appellant's Br. 6.

## II. Discussion

We review the district court's decision to seal documents or proceedings for abuse of discretion. *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). But when the sealing of the documents or proceedings implicates First Amendment concerns, that sealing decision demands "close appellate scrutiny," *id.*, as well as an abuse-of-discretion review that is "more rigorous" than usual, *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995). Indeed, in such cases, this Circuit has "traditionally undertaken an independent review of sealed documents, despite the fact that such a review may raise factual rather than legal issues." *Newsday*, 730 F.3d at 163 (citing *United States v. Aref*, 533 F.3d 72, 82-83 (2d Cir. 2008)); *see also United States v. Erie Cty.*, 763 F.3d 235, 238 (2d Cir. 2014).

Upon a rigorous review of both the public and sealed record, we conclude that the district court did not err in denying Dwyer's motion to unseal. Assuming without deciding that a presumption of access under the First Amendment applies to both John Doe's name and "all the documents and proceedings" in the case, A6, the district court's sealing decision was justified. We also conclude that the district court provided adequate notice for the August 13, 2014, proceeding regarding the courtroom closure.

"[A] presumption of openness," the Supreme Court has stated, "inheres in the very nature of a criminal trial under our system of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion). But that presumption of access under the First Amendment is not absolute—it simply places a heavy burden on those who seek to limit public

5

access. *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982) ("[T]he State's justification in denying access must be a weighty one."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (noting that the First Amendment "gives rise to a higher burden on the party seeking to prevent disclosure"). The standard is strict and well established. "[T]o deny the right of access in order to inhibit the disclosure of sensitive information," the party must demonstrate that "the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspaper*, 457 U.S. at 606-07.

When considering, in particular, a motion to close a courtroom, the district court must determine, first, whether "there is a substantial probability of prejudice to a compelling interest of the defendant, government, or third party, which closure would prevent." *Doe*, 63 F.3d at 128 (footnote omitted) (citation omitted). Such "compelling interests" include, for example, "'the integrity of significant government activities entitled to confidentiality, such as ongoing undercover investigations or detective devices,' and danger to persons or property." *Id.* (alteration omitted) (citation omitted) (quoting *In re Herald Co.*, 734 F.2d 93, 100 (2d Cir. 1984)). If the district court finds that there is "a substantial probability of prejudice," it must consider "whether 'reasonable alternatives to closure cannot adequately protect' the compelling interest that would be prejudiced by public access." *Id.* (quoting *Press-Enter.*, 478 U.S. at 14). Without such reasonable alternatives, the district court must then determine whether "the compelling interest 'overrides the qualified First Amendment right of access.'" *Id.* (alteration omitted) (quoting *Press-Enter.*, 478 U.S. at 9). If it does, it must make "'specific, on the record findings'" to that effect. *United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir. 2005) (quoting *United States v. Haller*, 837 F.2d 84, 87 (2d Cir. 1988)). Last, any closure order, "while not

necessarily the least restrictive means available to protect the endangered interest," should be "narrowly tailored to that purpose."  *Doe*, 63 F.3d at 128.

Having reviewed the public and sealed record as well as the parties' submissions, we conclude that the district court did not err in denying Dwyer and the public access to John Doe's name, to the August 13, 2014, proceeding, and to certain documents, such as the information containing the criminal charges to which he pleaded guilty.  The district court properly determined that sealing was required in order to serve the Government's compelling interest in promoting safety and ongoing national security investigations.  Indeed, as the district court concluded, revealing John Doe's identity could "jeopardize the safety of numerous individuals," and the "investigation involves national security issues and [its] non-public nature . . . is crucial to its success."  A10.  The sealing was as narrowly tailored as possible given that the district court determined that John Doe's identity cannot, at present, be revealed.   The Government did not simply make a bald assertion of danger.  Rather, with defense counsel's consent, it explained the nature of the national security concerns to the district court under seal.  The district court, in turn, allowed the case to proceed under the "John Doe" caption, and it permitted certain related documents to be filed under seal.

The district court also did not violate any notice requirements in its sealing of the August 13, 2014, proceeding.  In *United States v. Alcantara*, 396 F.3d 189 (2d Cir. 2005), this Circuit explained the procedures that a district court must follow before closing a proceeding:

> '[A] motion for courtroom closure should be docketed in the public docket files maintained in the court clerk's office.  The motion itself may be filed under seal, when appropriate, by leave of court, but the publicly maintained docket entries should reflect the fact that the motion was filed, the fact that the motion and any supporting or opposing papers were filed under seal, the time and place of any hearing on the motion, the occurrence of such hearing, the disposition of the motion, and the fact of courtroom closure, whether ordered upon motion of a

>party or by the Court *sua sponte*. Entries on the docket should be made promptly, normally on the day the pertinent event occurs.'

*Id.* at 200 (citations omitted) (quoting *In re Herald Co.*, 734 F.2d at 102-03).

Here, both the Government and the district court complied with the notice requirements that this Circuit has set out for sealing a courtroom. First, the Government properly filed a public notice of its motion on the docket by 3:30 p.m. on August 12, and the hearing began at approximately 5:30 p.m. on August 13. Notice of the hearing was available on the docket as well as on the court's website. Although Dwyer argues that receiving notice "only a day prior to the hearing" is "insufficient advance notice," Appellant's Br. 17 (emphasis omitted), we have never provided any strict minimum amount of time for the notice requirement. To the contrary, this Court has indicated that such "notice requirements must remain sufficiently flexible to accommodate the exigencies of the litigation process and avoid unwarranted delays." *In re Herald*, 734 F.2d at 102. To that end, we require only that "[s]*ome form* of public notice should be given . . . to afford an opportunity to challenge courtroom closure accomplished in the absence of spectators." *Id.* (emphasis added). Here, the public received more than one day's notice about the public hearing regarding the sealing of the courtroom on August 13. At least under the circumstances of this case, the notice to the public satisfied the flexible requirement that this Court has provided.

Dwyer argues, finally, that the present case is "part of a disturbing trend in the Eastern District of New York to misuse criminal prosecution as an investigatory tool." Appellant's Br. 18. But we can find no record that Dwyer presented this argument to the district court. Nor can we discern any evidence in the record before us on appeal that would support this far-reaching claim. Accordingly, we find Dwyer's argument to be unsubstantiated.

8

**III.    Conclusion**

We have considered Dwyer's remaining arguments and find them, too, to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.  We also remind the Government that, should the conditions for unsealing set forth in the sealed order come to pass, it is under a continuing obligation to inform the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

9

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit